```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
RUBEN GARCIA,                                               :
                                                            :   **MEMORANDUM**
                                        Petitioner,         :   **DECISION AND ORDER**
                                                            :
                - against -                                 :   19-cv-5547 (BMC)
                                                            :
MICHAEL J. FRANCHI, Warden, Suffolk                         :
County Jail,                                                :
                                                            :
                                        Respondent.         :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Petitioner seeks habeas corpus review under 28 U.S.C. § 2254 of his state court conviction for two misdemeanor counts – sexual misconduct and sexual abuse in the second degree – for which he was sentenced to the maximum of one year's custody. He relies on three evidentiary errors in his trial, but two of them are procedurally barred and the last does not warrant habeas corpus relief.[1] The petition is therefore denied.

## BACKGROUND

Additional facts will be set forth below as necessary to address each of petitioner's points of error, but to summarize, during a sleepover that his daughters had with their cousin V.B., who was nine years old at the time, petitioner removed V.B. from the girls' bedroom and sexually assaulted her. V.B. did not disclose the attack to anyone until several years later, when she told a

---

[1] Petitioner also raises several points of error that he acknowledges arise solely under New York state evidence law. He asserts that "state law evidentiary errors may exacerbate a constitutional violation . . .", citing, Jones v. Stinson, 229 F.3d 112, (2d Cir. 2000). The dictum from Jones does not apply here because I am not finding a federal constitutional violation, and there is thus no reason to inquire whether state law errors "exacerbate" it.

friend, and did not report it to her mother until six years after the attack had occurred. The trial thus took place about seven years after the incident, when V.B. was 16 years old.

## DISCUSSION

I.  **Preclusion of inquiry into V.B.'s alcohol use**

In his seven-point brief in the Appellate Term, petitioner included a point entitled:

> THE TRIAL COURT VIOLATED RUBEN GARCIA'S SIXTH AMENDMENT
> RIGHT TO CONFRONTATION BY IMPERMISSIBLY PRECLUDING
> AREAS OF CROSS-EXAMINATION OF PROSECUTION WITNESSES.

This section argued solely that a limitation placed on the cross-examination of V.B. and her mother – specifically, V.B.'s alleged alcohol and drug use – violated petitioner's Confrontation Clause rights. The Appellate Term rejected the argument, holding that petitioner

> failed to preserve his contention that, by limiting his cross-examination of the victim and her mother concerning the victim's alleged alcohol and drug use and engagement in illegal acts, the District Court deprived him of his constitutional right to confront adverse witnesses, as defendant did not assert a constitutional right to introduce the excluded evidence at trial.

People v. Garcia, 62 Misc.3d 127(A), 2018 WL 6627725, at *1 (App. Term, 2nd Dep't Dec. 13, 2018) (unreported).

A federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is independent of the federal question and adequate to support the judgment." Lee v. Kemna, 534 U.S. 362, 375 (2002) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)) (emphasis omitted). When a state court rejects a petitioner's claim because he failed to comply with a state procedural rule, the procedural bar may constitute an adequate and independent ground for the state court's decision. See, e.g., Coleman, 501 U.S. at 729-30; Murden v. Artuz, 497 F.3d 178, 191-92 (2d Cir. 2007). State

procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state. Lee, 534 U.S. at 376 (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)). Moreover, if a state court rejects a specific claim on an adequate and independent state law ground, then a federal court should not review the merits of the claim, even if the state court addressed the merits of the claim in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) (noting that state courts "need not fear reaching the merits of a federal claim in an *alternative* holding" because "[b]y its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law").

In addition to procedural bars based on state law that a federal court must recognize on federal habeas corpus review, a claim raised on habeas corpus is procedurally barred if a petitioner did not raise it in state court, and the procedural mechanism for raising it under state law is no longer available. See, e.g., Acosta v. Artuz, 575 F.3d 177, 188 (2d Cir. 2009); DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (citing Harris, 489 U.S. at 263 n.9); McKethan v. Mantello, 292 F.3d 119, 122-23 (2d Cir. 2002) (claims deemed exhausted where they were "procedurally barred for not having been raised in a timely fashion"); Washington v. James, 996 F.2d 1442, 1447 (2d Cir. 1993) ("Because he failed to raise his claim in state court and no longer may do so, his claim is procedurally defaulted."); Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). In that situation, the claim will be deemed exhausted, but exhaustion does not help the petitioner because the claim is procedurally barred. See St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004); DiGuglielmo, 366 F.3d at 135; McKethan, 292 F.3d at 122-23; Ramirez v. Attorney Gen., 280 F.3d 87, 94 (2d Cir. 2001); Reyes v. Keane, 118 F.3d 136, 139

(2d Cir. 1997); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994); Washington, 996 F.2d at 1446-47; Grey, 933 F.2d at 120-21.

I have reviewed the testimony of V.B. and her mother and the accompanying colloquy, and have no doubt that the Appellate Term reached the correct conclusion. There is nothing on the trial record remotely suggesting that petitioner had raised a Confrontation Clause claim by preventing petitioner from examining V.B. and her mother about V.B's alleged drug use. The trial court had no notice of such a claim and no opportunity to consider it as a basis for allowing the cross-examination.

By analogy, it is well-settled as both a matter of New York and federal law that a hearsay objection made at trial does not preserve a Confrontation Clause challenge to the same testimony. See e.g. Daye v. Attorney General of N.Y., 696 F.2d 186, 193 (2d Cir. 1982) ("[A] defendant's claim that he was deprived of a fair trial because of the admission in evidence of a statement objectionable as hearsay would not put the court on notice that the defendant claimed a violation of his constitutional right to be confronted by his accusers."); Davis v. Lee, No. 13-CV-3827, 2015 WL 1379024, at *4-5 (S.D.N.Y. March 25, 2015) ("[I]t is well-settled law in New York that the invocation of a hearsay objection is insufficient to preserve a Confrontation Clause violation.") (quoting Bryant v. Lempke, No. 08-CV-6103, 2010 WL 3063073, at *5 (W.D.N.Y. Aug. 2, 2010)). It follows that an unspecified objection must be even less effective to preserve a Confrontation Clause challenge, for it cannot be that a party has a better position to argue preservation if he specified no ground as opposed to specifying a hearsay objection. Here,

4

although trial counsel objected to the court's ruling, he identified no federal constitutional grounds for his objection.[2]

If, notwithstanding that, I was going to read a federal constitutional claim into his objection based on the colloquy, over and above state evidentiary law, it would be for a deprivation of due process. But as shown above, that is not what petitioner argued on his direct appeal.

Perhaps because of that, petitioner has reformulated the argument in his habeas corpus petition. The single point in his habeas corpus brief is entitled: "RIGHT TO PRESENT A DEFENSE, CONFRONTATION, AND CROSS-EXAMINATION." This conflated description may be an attempt to obscure the issues that were actually presented to the state court. If so, it fails.

To the extent petitioner is arguing that precluding the examination of V.B. as to her alcohol use violated his due process rights, that is a claim that was never raised on direct appeal. Because direct appeal was the only way that this due process claim could be raised, see N.Y. C.P.L. § 440.10(2)(b), and a petitioner is only permitted one direct appeal under New York practice, see Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001), the due process claim is deemed exhausted and procedurally barred. See supra St. Helen, 374 F.3d at 183; DiGuglielmo, 366

---

[2] This case raises a twist on New York's contemporaneous objection rule, see N.Y. C.P.L. 470.05(2). In the usual case, that rule is applied when a prosecutor introduces evidence and defense counsel fails to object. See e.g., People v. Sherwood, 178 A.D.3d 1093, 1093, 112 N.Y.S.3d 555, 555 (2d Dep't 2019). This case presents the reverse situation: the defendant is attempting to introduce evidence and the trial court sustains the prosecutor's objection. Even in this situation, however, it is a firmly established and regularly followed rule of New York criminal procedure law that if the defense attorney wishes to raise a constitutional objection to the trial court's exclusionary ruling, as opposed to an evidentiary objection, he must state that constitutional objection on the record. See e.g., People v. Powell, 27 N.Y.3d 523, 529, 35 N.Y.S.3d 675, 678 (2016); People v. Angelo, 88 N.Y.2d 217, 222, 644 N.Y.S.2d 460, 461 (1996); People v. Gonzalez, 54 N.Y.2d 729, 730, 442 N.Y.S.2d 980, 981 (1981); People v. Radcliffe, 273 A.D.2d 483, 484-85, 711 N.Y.S.2d 436, 437-38 (2d Dep't 2000); People v. Mack, 300 A.D.2d 254, 255, 752 N.Y.S.2d 313, 314-15 (1st Dep't 2002).

F.3d at 135; McKethan, 292 F.3d at 122-23; Ramirez, 280 F.3d at 94; Reyes, 118 F.3d at 139; Bossett, 41 F.3d at 828; Washington, 996 F.2d at 1446-47; Grey, 933 F.2d at 120-21.[3]

However, even if a claim is procedurally barred, there are circumstances in which a federal court may consider the merits of the claim. A procedurally barred claim can be reviewed if the petitioner can demonstrate cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750; Harris, 489 U.S. at 262. The first avenue, cause for the default and prejudice therefrom, can be demonstrated with "a showing that the factual or legal basis for a claim was not reasonably available to counsel [or] that 'some interference by state officials' made compliance impracticable, or that the procedural default is the result of ineffective assistance of counsel." Bossett, 41 F.3d at 829 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986) (internal alterations omitted)). But although ineffective assistance of counsel can constitute "cause" sufficient to avoid a procedural default, Murray, 477 U.S. at 488-89, if a petitioner wishes to rely on ineffective assistance, the ineffective assistance claim must itself have been exhausted in the state court, Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).

---

[3] In his habeas submission, and even more in his brief before the Appellate Term, petitioner focuses on the trial court's statement, rejecting trial counsel's effort to inquire into V.B.'s drug and alcohol use, that, "[a]nything illegal, I'm not going to let you ask her." Trial counsel responded to the court by asking, "Any illegal acts she engages in you are precluding me from asking?", to which trial court responded, "Yes."

The trial court's ruling was, at least, overbroad as a matter of evidence law. However, trial counsel never mentioned, let alone proffered a good faith basis, for inquiring into any "illegal acts" beyond the alleged underage drinking.

In any event, the trial court's misstatement of the law does not alter the fact that trial counsel raised no Confrontation Clause objection and the Appellate Term therefore properly held that the Confrontation Clause claim on appeal was unpreserved.

The latter avenue for avoiding a procedural bar, a fundamental miscarriage of justice, is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. See Murray, 477 U.S. at 495-96. "A fundamental miscarriage of justice occurs only in those 'extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.'" Funderbird–Day v. Artuz, No. 97 Civ. 7786, 2002 WL 31427345, at *6 (S.D.N.Y. Nov. 4, 2002) (quoting Rodriguez v. Mitchell, 252 F.3d 191, 204 (2d Cir. 2001)). For a fundamental miscarriage of justice, a petitioner must demonstrate by clear and convincing evidence that but for the constitutional error, no reasonable juror would have returned a guilty plea. Reyes v. New York, No. 99 Civ. 3628, 1999 WL 1059961, at *3 (S.D.N.Y. Nov. 22, 1999) (quoting Sawyer v. Whitley, 505 U.S. 333, 335 (1992)). The Supreme Court has stated that impeachment evidence "is a step removed from evidence pertaining to the crime itself" and "tends only to impeach the credibility of" the witness. Calderon v. Thompson, 523 U.S. 538, 563 (1998) (concluding that petitioner's additional "impeachment evidence provides no basis for finding a miscarriage of justice" (citing Sawyer, 505 U.S. at 348)).

Petitioner in this case cannot rely on ineffective assistance of counsel, as no such claim was ever raised let alone exhausted in the state courts. And although petitioner claims that the application of the procedural bar would constitute a fundamental miscarriage of justice, his argument does not satisfy that standard. The jury knew that V.B. was testifying some eight years after the events at issue; that V.B. was nine years old at the time of the incident and eighteen years old when she testified at trial, more than long enough for memories to take on a life of their own; that V.B.'s reporting of the events years later came out piecemeal, with her first telling her mother of an alleged prior incidents of inappropriate contact with petitioner and only weeks later

7

telling her mother of the sexual assault; and that during her testimony, she did not remember whether, when she spoke to the investigating detective two weeks later, she had told the detective about prior incidents in which she alleged petitioner had improperly touched her. There was thus plenty of opportunity for petitioner's trial counsel to argue that there was ample reason to doubt her story.

It was not as if the good-faith basis for petitioner's inquiry into V.B.'s alleged alcohol use was based on a medical record of a stint in a rehabilitation facility. Rather, he had a Facebook page showing her holding an alcoholic beverage. Facebook is littered with pages of teenagers improperly displaying alcohol. Although I might well have allowed the impeachment, the fact that petitioner's counsel had a Facebook page showing her with alcohol would not have detracted so much from her credibility, in comparison to the other grounds of impeachment available to petitioner, that the failure to allow it constituted a fundamental miscarriage of justice.

## II. Cross-examination of Det. Cianfrogna regarding V.B.'s statement

The investigating detective on the case, Ronald Cianfrogna, testified at trial. On cross-examination, defense counsel attempted to cross-examine him on the statement he had taken from V.B. as part of his investigation. Defense counsel proffered that although V.B. had testified at trial that she had suffered two prior incidents of unwanted contact by petitioner (kissing her and touching her thigh, respectively), she had not told Det. Cianfrogna about those incidents.

The trial court sustained the prosecutor's objection on the ground of hearsay. Both the trial court and the prosecutor believed that any out of court statement of a declarant is hearsay without regard to the purpose for which it was being offered. What followed was a lengthy colloquy in which defense counsel unsuccessfully attempted to instruct the trial judge and the prosecutor on the basic evidentiary requirement that to constitute hearsay, an out of court

8

statement must be offered for the truth of the matter it asserts. Defense counsel emphasized that he was only offering V.B.'s prior statement to show she had made inconsistent statements about petitioner's alleged sexual abuse of her, and was not offering her prior statement to show that it was true. In fact, the defense theory of the case was that petitioner had never abused V.B. at all, neither once nor more than once.

The prosecutor compounded the trial court's misunderstanding by arguing that since she had been unable to elicit V.B.'s statement on her direct examination of Det. Cianfrogna on the ground of hearsay, V.B.'s prior statement was still hearsay when defense counsel attempted to use it on cross-examination. Defense counsel again explained that under basic hearsay principles, this was not the case. The prosecutor also argued that since defense counsel had chosen not to cross-examine V.B. on her prior statement, he could not raise it with Det. Cianfrogna; defense counsel responded that he had generally inquired of her but she did not remember what she told Det. Cianfrogna about prior incidents. The trial court recessed to consider the parties' positions, and when court reconvened, maintained its ruling sustaining the objection on hearsay grounds.

Petitioner's appellate counsel continued the evidence lesson attempted by trial counsel, *i.e.*, a lesson on the proper interpretation of the rule against hearsay under New York state law. The only difference between appellate counsel and trial counsel's presentation of the issue was one clause in one sentence in the brief point: "The Trial Court erred in declaring the statements hearsay and preventing a full cross-examination of the detective, *thereby depriving the defendant of a fair trial*." (Emphasis added.) As explained above, trial counsel had not argued that the failure to allow the impeachment evidence on Det. Cianfrogna's cross-examination would deprive petitioner of a fair trial.

The Appellate Term rejected this effort to graft on an additional claim to the hearsay argument that defense counsel had raised at trial. It held that any argument about "fair trial" was unpreserved:

> Defendant likewise failed to preserve his contention that the court denied him a fair trial by precluding him, on the ground of hearsay, from questioning an investigation detective as to whether the detective had been told by the victim that she had been sexually abused one time by defendant when there was evidence that the victim had told others that she had been abused multiple times by defendant.

Garcia, 2018 WL 6627725, at *1 (citations omitted).[4]

In his habeas corpus petition, petitioner has completed the transformation of his state law evidentiary issue into a federal constitutional one: "[T]he Supreme Court and Second Circuit have held that a criminal defendant in a sex abuse case has a due process right to introduce extrinsic evidence to disprove 'other' false allegations of sexual abuse . . . ." However, such a claim was never presented at trial. Assuming, *arguendo*, that the Appellate Term, by using the phrase "fair trial," was referring to a federal constitutional claim for denial of due process (and that is a very broad reading), its holding that petitioner failed to preserve such a claim is firmly based in the trial record. Neither on appeal nor at trial was there any mention of possible constitutional consequences from the erroneous evidentiary ruling. Nor was there mention of fair trial, due process, the federal Constitution, federal cases discussing due process, or anything other than state evidentiary law. Because state courts firmly and regularly refuse to consider arguments made for the first time on appeal, see N.Y. C.P.L. 470.05(2), the Appellate Term's

---

[4] The Appellate Term also noted in the alternative that "[w]ere we to review the issue . . . ", it would hold that although the trial court erred in excluding the cross-examination, the error was harmless. Garcia, 2018 WL 6627725, at *1. Petitioner contends that this alternative ruling means that the Appellate Term's invocation of a procedural bar may be disregarded on federal habeas corpus review. The law is to the contrary. See Harris, 489 U.S. at 264 n.10.

holding that petitioner's "fair trial" claim was unpreserved means that the claim is procedurally barred from federal habeas corpus review.[5]

Once again, I see no cause for excusing the procedural default, as petitioner never asserted, let alone exhausted, a claim for ineffective assistance of trial counsel. Although it was error to preclude petitioner's trial counsel from inquiring into prior inconsistent statements of V.B. to Det. Cianfrogna, this missing piece of impeachment evidence is insufficient to cause a fundamental miscarriage of justice for the reasons set forth in the preceding point.

**III. Limitations on the defense case-in-chief**

**A. Background**

The primary prosecution evidence at trial was the testimony of V.B., and an expert who testified generally that delayed disclosure is common in child sexual assault cases. Petitioner testified, denying V.B.'s accusation, as did his family members who were in the house with petitioner and V.B. at the time of the alleged assault, although they were not in the room where V.B. said the assault occurred.

To further impeach V.B. and her mother as part of the defense's case, defense counsel wanted to bring out that V.B.'s mother had spoken to a Child Protective Services caseworker and reported a false incident, apart from the charged conduct at trial, shortly after V.B. and her mother reported the charged conduct to the police. The case worker was prepared to testify that

---

[5] In a response brief to this Court, petitioner argued that the Appellate Term erred in finding the Confrontation Clause claim unpreserved because, at one point during the colloquy on Det. Cianfrogna's cross-examination, defense counsel said, "I have the absolute right to *confront* the detective . . . ." (Emphasis added.) Petitioner misunderstands the Confrontation Clause. As all of the Supreme Court authority on this point illustrates, the Confrontation Clause applies when testimonial statements by an out-of-court witness are introduced into evidence. See, e.g., Davis v. Washington, 547 U.S. 813 (2006). Here, it wasn't the confrontation of Det. Cianfrogna that was at issue – defense counsel did not seek to impeach him, at least on this point. Rather, it was the confrontation of V.B. through her prior out of court inconsistent statement. Thus, the trial court had no opportunity to consider a Confrontation Clause claim.

V.B.'s mother had told him that petitioner had previously raped V.B. in the presence of petitioner's daughter, Marielis, and that petitioner had told Marielis to face the wall while he did it so that she wouldn't see. I am going to refer to this alleged inconsistent statement about the uncharged conduct as the "wall incident."

Since V.B. had testified that petitioner had only sexually assaulted her as part of the one-time charged conduct and the "thigh" incident, defense counsel's aim was to show that V.B. had told inconsistent stories by never reporting the wall incident to anyone except her mother, who then told the caseworker. Alternatively, since V.B.'s mother had testified that she was unaware of any other incidents other than those to which she testified, introduction of her relaying the wall incident to the caseworker, defense counsel hoped, could impeach V.B.'s mother.

There were two steps to defense counsel's strategy to show this alleged inconsistent statement. First, in examining Marielis as part of the defense case, he attempted to inquire whether the wall incident had ever occurred: "When you were 11 or 12 or 13, did your father [petitioner] ever say to you to face the wall and proceeded to rape your cousin?" Presumably expecting a negative answer, defense counsel then intended to call the CPS caseworker to testify that, in fact, V.B.'s mother had reported the wall incident to him.

The trial court refused to allow the direct examination of Marielis on the wall incident, and subsequently refused to allow the CPS caseworker to testify as to the conversation he had with V.B.'s mother about that incident. The trial court did not state any grounds for sustaining the objection as to Marielis's testimony. However, after sustaining the objection as to testimony on the same subject from the caseworker, the trial court explained that it was excluding the line of inquiry from both witnesses because defense counsel had not examined V.B. or her mother about the specifics of the wall incident.

Defense counsel argued, first, that he had no obligation to ask V.B. or her mother about the wall incident, and, second, even if he did, he had asked both V.B. and her mother to describe "all other" incidents, but neither testified about the wall incident that V.B.'s mother had disclosed to the caseworker. The trial court, however, ruled that since defense counsel had not inquired of V.B. and her mother as to the specifics of the wall incident, petitioner could not bring in evidence about it from third parties, whether Marielis or the caseworker.

On appeal, petitioner argued that the exclusion of evidence as to this inconsistent statement violated his due process right to a fair trial. The Appellate Term rejected this claim on the merits:

> Defendant argues that such evidence would have revealed that the victim had made inconsistent allegations regarding the total number of sexual abuse incidents that had occurred to her and thus was probative of the victim's credibility. The trial court has discretion to admit or preclude relevant evidence based on an analysis of its probative value versus whether it confuses the main issues and misleads the jury. Here, defendant had already elicited testimony from the victim tending to suggest that the victim had made inconsistent allegations regarding the total number of sexual abuse incidents that had occurred to her, and, thus, the evidence defendant sought to introduce would have been cumulative. Moreover, the limited probative value of the evidence was outweighed by the danger that it would obscure the main issue in this case, i.e., whether the incident in question had actually occurred, and mislead the jury.

Garcia, 2018 WL 6627725, at *2 (internal citations and quotations omitted).

### B. Analysis

Because the Appellate Term decided this point on the merits, my review of its decision is subject to the limitations of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. Section 2254(d)(1) of Title 28 permits habeas corpus relief only if a state court's legal conclusion is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). The

decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature," or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405 (2000) (internal quotation marks omitted). A state court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005).

The Supreme Court has made clear that the AEDPA standard of review is extremely narrow, and is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal[.]" Ryan v. Gonzales, 568 U.S. 57, 75 (2013) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Since Harrington, the Supreme Court has repeatedly admonished Circuit Courts for not affording sufficient deference to state court determinations of constitutional issues. See, e.g., White v. Wheeler, 136 S. Ct. 456, 460 (2015) (quoting Burt v. Titlow, 571 U.S. 12, 19 (2013) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'").

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Crane v. Kentucky, 476 U.S. 683, 690 (1986) (internal quotations omitted); see Wade v. Mantello, 333 F.3d 51, 57 (2d Cir. 2003) ("Supreme Court precedent makes clear that a criminal defendant is entitled by the Constitution to a meaningful opportunity to present a complete defense."). Indeed, "[t]he right to present a defense is one of the minimum essentials of a fair trial." Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988) (internal quotations omitted).

14

When a trial court excludes evidence relevant to a defense theory, "[it] is the materiality of the excluded evidence to the presentation of the defense that determines whether a defendant has been deprived of a fundamentally fair trial."[6] Id. at 925. The materiality of excluded evidence, in turn, is determined by considering whether the evidence's admission could have "create[d] a reasonable doubt that did not otherwise exist." Jones, 229 F.3d at 120. "In a close case, additional evidence of relatively minor importance might be sufficient to create reasonable doubt." Id. (quoting United States v. Agurs, 427 U.S. 97, 112 (1976) (internal quotations omitted)); see Sims v. Stinson, 101 F. Supp. 2d 187, 198 (S.D.N.Y. 2000) (acknowledging that for an evidentiary error to reach constitutional magnitude, "it must have been crucial, critical, highly significant" (quoting Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985))).

Therefore, a petitioner seeking habeas relief on the basis of an allegedly erroneous evidentiary ruling must establish that the trial court's error "deprived [him] of a *fundamentally* fair trial." Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004) (quoting Rosario v. Kuhlman, 839 F.2d 918, 925 (2d Cir. 1988)). Moreover, a federal habeas court reviews the evidentiary error "objectively in light of the entire record before the jury." Collins, 755 F.2d at 19.

Under the deferential standard of AEDPA merits review, I cannot find that the Appellate Term's rejection of petitioner's argument was contrary to or an unreasonable application of Supreme Court authority. As noted above, at least the possibility that V.B. had told different stories at different times was raised during her cross-examination when defense counsel elicited that she could not remember whether she had told Det. Cianfrogna about one or more incidents involving petitioner. I do not doubt that allowing Marielis and the caseworker to supply the specifics of an alleged prior incident about which she did not testify would have had additional impeachment value, but the

---

[6] Of course, a reviewing court should only address the materiality of the excluded evidence if it finds that the trial court's evidentiary ruling was improper. See Wade, 333 F.3d at 58–59.

preclusion of one of several impeachment arguments rarely rises to the level of constitutional error. See e.g. Calderon, 523 U.S. at 563; Bostic v. Superintendent, Woodbourne Corr. Facility, No. 09-cv-3540, 2012 WL 7783407, at *7-9 (E.D.N.Y. Sept. 13, 2012), report and recommendation adopted, 2013 WL 1168850 (E.D.N.Y. March 20, 2013); George v. Lord, 334 F. Supp. 2d 327, 334-35 (E.D.N.Y. 2004). It does not rise to that level here.

## CONCLUSION

The petition is denied and the case is dismissed. The issue of whether the trial court deprived petitioner of his right to present a defense by restricting the direct examination of Marielis and precluding the testimony of the caseworker is one that is "adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal citation and quotation marks omitted). See 28 U.S.C. § 2253(c). A certificate of appealability is therefore granted as to that issue.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
      January 21, 2020